IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALI POURFARD,                                          Civ. No. 07-854-AA
                                                       OPINION AND ORDER
          Plaintiff,

     v.

EQUIFAX INFORMATION SERVICES LLC,
a foreign corporation, SPRINT
NEXTEL CORPORATION, a foreign
corporation, AFNI, INC., a foreign
corporation, TRANS UNION LLC, a
foreign limited liability company,
and EXPERIAN INFORMATION SOLUTIONS,
INC., a foreign corporation,

          Defendants.
_____

Justin M. Baxter
Baxter & Baxter, LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225

Keith D. Karnes
Olsen, Olsen & Daines
1599 State Street
P.O. Box 12829
Salem, Oregon 97309-0829
     Attorneys for plaintiff


1 - OPINION AND ORDER

Jeffrey M. Edelson
Markowitz, Herbold, Glade & Mehlhaf, PC
Suite 3000, Pacwest Center
1211 S.W. Fifth Avenue
Portland, Oregon 97204-3730

K. Ann Broussard
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
    Attorneys for defendant
    Equifax Information Services LLC

AIKEN, Chief Judge:

Plaintiff, Ali Pourfard, brings this civil action pursuant to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and the Unlawful Debt Collection Practices Act, Or. Rev. Stat. § 646.639, et seq. This court has jurisdiction pursuant to 15 U.S.C. §§ 1681(p) and 1692(k), and supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims. For the reasons given below, defendant Equifax Information Services LLC's motion for summary judgment is denied.

## I. Factual Background

In March 2002, plaintiff received two mobile phones from Sprint/Nextel with a 30-day money back guarantee, and then returned both phones within 30 days. After plaintiff returned the phones, Sprint/Nextel continued to bill plaintiff for phone service. Plaintiff contested these charges totaling approximately $295.00. Pourfard Decl. Ex. 2 at 9.

Sprint/Nextel assigned plaintiff's account to Anderson

Financial Network (AFNI), a collection agency, and in late 2004, AFNI began reporting the Sprint/Nextel account to defendant as a collection item.   Plaintiff disputed the accuracy of the AFNI account to defendant on four occasions between June 9, 2005, and January 2007.

On June 9, 2005, plaintiff's lawyer wrote defendant, and provided defendant with a receipt showing return of the phones and Sprint/Nextel's return policy.   Pourfard Decl. Ex. 2 at 1.   In response, on June 20, 2005, defendant transmitted an Automated Consumer Dispute Verification (ACDV) report to AFNI, informing them that plaintiff disputed the current balance, and requesting verification of the loan amount, payment amount, and past due amount. Baxter Decl. Ex. 1 at 13-14, Sapere Dep. 41:15-17; 44:1-6. Defendant admits that, as part of its investigation, it did not inform AFNI that GC Services, a collection agency, stopped reporting the Sprint/Nextel account or that plaintiff disputed the charges because he had returned the phones within 30 days. Defendant further admits that this information would have been useful to AFNI in understanding the issue in dispute. Baxter Decl. Ex. 1 at 14, Sapere Dep. 44:17-45:17; 67:1-68:4.

After plaintiff phoned defendant, defendant sent a second ACDV to AFNI on August 22, 2005.  Baxter Decl. Ex. 1 at 19, Sapere Dep. 62:15-16.   Again, the ACDV did not reference the return of the telephones within 30 days or to the deletion of the GC Services account. Baxter Decl. Ex. 1 at 20, Sapere Dep. 67:1-68:4.

On November 28, 2006, plaintiff obtained a $5,201.00 default

judgment in the small claims department of the Circuit Court of Lane County for wrongful billing and damaged credit history against Sprint/Nextel. Broussard Decl. Ex. A, Pourfard Dep., Vol. I , 125:2-10. Plaintiff subsequently asked the judge to order Sprint/Nextel to stop reporting false information about plaintiff; however, the judge responded that he could not grant relief that was not sought in the complaint.

On December 11, 2006, plaintiff provided defendant with a copy of the default judgment. Pourfard Decl. Ex. 8. Defendant sent an ACDV to AFNI on December 13, 2006. This ACDV included a discussion of the lawsuit filed in Lane County. However, defendant admits that it wrongly coded the dispute as a dispute over ownership. Accordingly, AFNI verified the name, address, and social security number and defendant continued to report the Sprint/Nextel account in plaintiff's credit reports. Baxter Decl. Ex. 1 at 25, Sapere Dep. 87:16-88:12; 90:10-23.

Lastly, on January 3, 2007, plaintiff contacted defendant, and again defendant transmitted a ACDV to AFNI. This ACDV mentioned the judgment filed in plaintiff's favor against Sprint/Nextel. However, AFNI verified the I.D. and account information, and defendant continued to report the Sprint/Nextel account in plaintiff's credit reports. Baxter Decl. Ex. 1 at 26-27, Sapere Dep. 95:1-8,98:22-99:2.

Plaintiff alleges his damaged credit history substantially factored in the following: a) On July 28, 2005, Advanta closed the business account set up for plaintiff and Beep Beep Cars LLC, a

4 - OPINION AND ORDER

limited liability company that plaintiff owned and operated; b) On
November 29, 2005, U.S. Bank/U.S. Bancorp denied plaintiff a line
of credit; and c) In 2006 and 2007, plaintiff applied for
preapproval for mortgages through Pacific Crest Funding, now known
as Summit Funding, and was approved each time, although at a much
higher interest rate than was available in the market at that time.
Plaintiff alleges that this higher rate prevented him from
purchasing a home at that time.

On June 8, 2007, plaintiff filed suit in this court.  On
October 5, 2009, defendant filed this motion for summary judgment.

## II. Standard

Summary judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(c).  The materiality of a fact is determined by the
substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The
authenticity of a dispute is determined by whether the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).

The moving party has the burden of establishing the absence of
a genuine issue of material fact.  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  If the moving party shows the absence of a
genuine issue of material fact, the nonmoving party must go beyond

5 - OPINION AND ORDER

the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec., 809 F.2d at 630.

### III. Discussion

#### A.   Plaintiff's FCRA Claims

Defendant moves for summary judgment on plaintiff's FCRA claims on the grounds that the plaintiff failed to present evidence that defendant reported inaccurate information.[1]  To establish a

---

[1]Plaintiff brings his claims under FCRA 15 U.S.C. §§ 1681e(b) and 1681i.  Section 1681e(b) states:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).  If a consumer has identified a factual inaccuracy on his or her credit report, § 1681i's reinvestigation requirement is activated.  This section states in relevant part:

> Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5),

prima facie case for claims under 15 U.S.C. §§ 1681e(b) and 1681(I), a plaintiff must present "evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (citing Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991)). Despite generating an inaccurate report, an agency can escape liability if it can establish that it followed reasonable procedures in investigating the dispute.   Id.   Defendant argues that their report did not contain inaccurate information, they followed reasonable procedures in investigating the dispute, and lastly, this action constitutes an impermissible collateral attack on AFNI.

                    I.    Accuracy of the Information

     Defendant argues that plaintiff's FCRA claims fail as a matter of law because he fails to present evidence that defendant reported inaccurate information.   Instead, plaintiff provided documents showing charges totaling $295.17, which correlated with the amount AFNI reported.   Plaintiff however argues that he was not disputing the amount, but rather that Sprint/Nextel had wrongfully assessed the charges and then erroneously assigned these charges to a collection agency.

_____

      before the end of the 30-day period beginning on the date
      on which the agency receives the notice of the dispute
      from the consumer or reseller.

15 U.S.C. § 1681i(a).

Defendant asserts that it is not their duty to determine whether Sprint/Nextel had erroneously charged plaintiff. Even if it is their duty, plaintiff failed to present evidence that he complied with all of the "conditions" set forth in Sprint/Nextel's return policy. For example, aside from returning the phones, "the phone cannot be damaged in any way and must be returned in its original box with the charger, battery, instruction manual, etc. enclosed." Pourfard Decl. Ex. 2 at 6. This return policy also stated "Please know you are responsible for all access and airtime charges accrued on your account." Pourfard Decl. Ex. 2 at 6. A review of the documents plaintiff enclosed with the dispute reveals that he received a credit for the phones he returned, but as of May 24, 2002, he still owed Sprint/Nextel an outstanding amount of approximately $295.00, which included "access and other charges." Pourfard Decl. Ex. 2 at 8-10.[2]

In response, plaintiff contends that he should not have incurred any access and airtime charges on the account because the phones did not work where plaintiff lived. Pourfard Decl. ¶ 2. He also asserts that he complied with all of the conditions of the return policy. Pourfard Decl. ¶ 2.

---

[2] Plaintiff returned the phones on March 13, 2002. Pourfard Decl. Ex. 2 at 7. The first bill on the record, dated March 14, 2002, shows initial "access and other charges" totaling approximately $100.00. Pourfard Decl. Ex. 2 at 8. It is unclear from the record how plaintiff incurred additional charges after he had returned his phones.

Defendant then argues that the small claims court default judgment did not demonstrate that plaintiff's debt to Sprint/Nextel was invalid. According to defendant, the judgment plaintiff provided was merely a default judgment that did not show any finding by the court that Sprint/Nextel should remove the account or that the account was otherwise inaccurately reported.

A default judgment conclusively establishes the truth of all material allegations that are contained in a complaint in an initial action, and every fact necessary to uphold default judgment. That remains true between the parties so far as subsequent proceedings on different cause of action are concerned. In re Baldwin, 245 B.R. 131, 136 (B.A.P. 9th Cir. 2000), aff'd, 249 F.3d 912 (9th Cir. 2001); Buck v Mueller, 221 Or. 271, 276, 351 P.2d 61 (1960). Plaintiff stated that Sprint/Nextel "wrongfully billed [him] for products and services that [he] has not received," and "damaged [his] credit history." Broussard Decl. Ex. A, Pourfard Dep., Vol. I , 125:2-10. On November 27, 2006, judgment was entered in plaintiff's favor for $5,201.50 in damages, costs, and prevailing party fee. Defendant contends that plaintiff needed to explicitly request that Sprint/Nextel remove the account from the credit file. This judgment, however, verifies plaintiff's material allegations that Sprint/Nextel wrongfully billed plaintiff. Therefore, the amount reported by AFNI of $295.00 was inaccurate. Plaintiff establishes a prima facie showing of

inaccuracy as required by sections 1681e and 1681i.

ii.  Reasonableness of the Investigation

Next, defendant asserts it is unreasonable to expect that it should have been able to resolve plaintiff's dispute with AFNI, when plaintiff was unable to do so.  However, "the caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information. The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources." Centuori v. Experian Info. Solutions, Inc., 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) (citing Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3rd Cir. 1997)).  "In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." Cushman, 115 F.3d at 224 (internal citation omitted).  In Cushman, the court expressly rejected the identical argument made here by defendant: the consumer must resolve the problem with the creditor. Id. Rather, "[t]he statute places the burden of investigation squarely on" the consumer reporting agency. Id.

Here, defendant continued to report the Sprint/Nextel account despite the judgment in favor of plaintiff.  The reasonableness of defendant's conduct therefore remains a question for the jury. See Dennis v. BEH-1, LLC, 520 F.3d 1066, 1071 (9th Cir. 2008) (credit

reporting agency is negligent for failing to understand the legal significance of court documents); and <u>Thomas v. Trans Union, LLC</u>, 197 F. Supp. 2d 1233, 1237 (D. Or. 2002) ("reasonable procedures defense creates a jury question"); <u>also Guimond</u>, 45 F.3d at 1333 (reasonableness will be a jury question "in the overwhelming majority of cases"). Therefore, defendant's motion for summary judgment is denied.

<u>iii. Collateral Attack</u>

Defendant next asserts that not only was their investigation reasonable, but this action constitutes an impermissible collateral attack against AFNI as an attempt to force defendant to resolve plaintiff's dispute with AFNI for him. Defendant relies on a series of cases precluding a collateral attack by a consumer against a reporting agency for reporting a disputed account when there remains a legal question that could not have been answered by the agency through reasonable investigation. <u>See DeAndrade v. Trans Union, LLC</u>, 523 F.3d 61, 65 (1st Cir. 2008); <u>Carvalho v. Equifax Info. Servs., LLC</u>, 588 F. Supp. 2d 1089, 1097 (N.D. Cal. 2008). The judgment, entered here in plaintiff's favor on November 27, 2006, settled this issue: Sprint/Nextel wrongfully billed plaintiff for the phones and phone service. If a court rules on the legal issue in favor of the consumer, and the consumer reporting agency continues to report it as a valid debt, then the consumer has grounds for a potential FCRA claim. <u>DeAndrade</u>, 523

F.3d at 68.  Following <u>DeAndrade</u>, plaintiff's FCRA claims cannot be dismissed on this issue.

    B.    <u>Claims Barred by Statute of Limitations</u>

Defendant next moves for dismissal of all claims arising prior to June 8, 2005, arguing they are barred by the applicable statute of limitations.  Plaintiff contends this motion should be denied as moot as he does not seek damages for the denial of an auto loan in 2004.  Although the auto loan is referenced in plaintiff's statement of facts, Pl. Resp. Def. Con. Stmt. Facts ¶ 38, I find no allegation concerning his 2004 denial in the amended complaint. Summary judgment is denied on this ground.

    C.    <u>Economic Damages</u>

Next, defendant moves for summary judgment on plaintiff's economic claims on the grounds that plaintiff fails to show defendant caused plaintiff's economic injuries.  The plaintiff "has the burden of proving that his damages were caused by the defendant's violations of the FCRA." <u>Acton v. Bank One Corp.</u>, 293 F. Supp. 2d 1092, 1099 (D. Ariz. 2003) (citing <u>Zala v. Trans Union, LLC</u>, 2001 WL 210693, at *6 (N.D. Tex. Jan. 17, 2001)); and <u>Johnson v. Wells Fargo Home Mortg., Inc.</u>, 558 F. Supp. 2d 1114, 22 (D. Nev. 2008); but see <u>Rothery v. Trans Union, LLC</u>, 2006 WL 1720498, at *5 (D. Or. Apr. 6, 2006) (applying a "substantial factor" test and citing <u>Philbin v. Trans Union, LLC</u>, 101 F.3d 957, 968 (3rd Cir. 1996)).  In <u>Johnson</u>, the court explained:

> The FCRA provides for three types of damages depending upon whether the violation was willful or negligent-actual, statutory and punitive. If plaintiff proves a willful violation, he will be entitled to either actual damages or statutory damages and he may be entitled to punitive damages at the court's discretion. 15 U.S.C. § 1681n. If Plaintiff proves a negligent violation, he will only be entitled to actual damages. 15 U.S.C. § 1681o. Because Plaintiff alleges both a willful and a negligent violation of the FCRA, his next step is to show he suffered actual damages because of Defendant's violation.

Johnson, 558 F. Supp. 2d at 1121-22. Plaintiff here must prove actual damages. "Actual damages" has been interpreted to include noneconomic damages, Guimond, 45 F.3d at 1333, and defendant does not move for summary judgment on these damages.

### I.   Summit Mortgage Loan

Defendant first contends that there is no evidence that Summit Funding denied plaintiff's mortgage loan application or that it made any credit decision based on any of defendant's credit reports. Additionally, the representative from Summit Funding testified that plaintiff's credit score at the time was "considered a good score," that would normally qualify plaintiff "for the best rate."

In response, plaintiff asserts that plaintiff was approved at an interest rate of 6.125% at a time when interest rates were at a historical low, and that Pacific Crest testified that plaintiff's credit score would have been a substantial factor in determining that interest rate. Plaintiff does not proffer any evidence showing that 6.125% was not the best rate at the time. Plaintiff,

13 - OPINION AND ORDER

however, alleges that because of the significantly higher rate, he was not able to purchase a home.

### ii.  U.S. Bank Application

Defendant argues that defendant cannot be held responsible for this alleged credit denial as it was based on a consumer report issued by another consumer reporting agency, CSC Credit Services. Plaintiff responds that Equifax has an agreement with Computer Sciences Corporation, under which CSC credit reporting agencies utilize Equifax's computerized credit database services. CSC retains ownership of its credit files and Equifax receives a processing fee for maintaining the database. See Morris v. Equifax Info. Servs., LLC, 457 F.3d 460, 466 (5th Cir. 2006). The Fifth Circuit analyzed this relationship at length and found that Equifax retained the duty to investigate despite the fact that CSC owned the credit files. Morris, 457 F.3d at 469.

A genuine issue of fact remains as to whether defendant supplied the credit report to CSC, and subsequently whether this report caused plaintiff's application to be denied.

### iii. Advanta Account Application

Defendant contends that plaintiff cannot recover damages for the cancellation of an Advanta credit card account, because it was a business credit account. Defendant relies on testimony by Advanta's representative who stated that Advanta does not issue any individual consumer credit card accounts, but only issues and

14 - OPINION AND ORDER

maintains business and corporate accounts. Def.'s Con. Stmt. Facts
Ex. D, Minalga Dep. 19:7-22. Plaintiff contends that he obtained
the Advanta account for both business and personal use, and Advanta
obtained a consumer credit report for plaintiff because plaintiff
was personally liable for the purchases.

The Ninth Circuit recently held that denial of credit for a
consumer to start a business venture was in part grounds for actual
damages under the FCRA.[3] Dennis, 520 F.3d at 1069; see Gorman v.
Wolpoff & Abramson, LLP, 584 F.3d 1147, 1174 (9th Cir. 2009)
(citing Dennis with approval). Following Dennis, plaintiff may
include the closure of his Advanta account as grounds for his FCRA
claims.

Therefore, I find that there are genuine issues of fact as to
whether plaintiff was refused credit and suffered economic loss as
a result of inaccurate accounts reported by defendant.

D. Punative and Statutory Damages

Finally, defendant contends that plaintiff is not entitled to
punitive and statutory damages. Punitive damages are only
available under the FCRA for willful violations of the statute.
See 15 U.S.C. § 1681n(a). Willful violations of the FCRA include
those violations committed with reckless disregard for FCRA duties.
Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007). I find

---

[3]Although, this seems contrary to "consumer report" as
defined under 15 U.S.C. § 1681a(d), we are bound by Ninth Circuit
precedent.

15 - OPINION AND ORDER

that a reasonable juror could conclude that the purported violations here were willful.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment (doc. 80) is DENIED. Defendant's motion to strike plaintiff's supplemental memorandum (doc. 95) is DENIED as moot. IT IS SO ORDERED.

Dated this ___5th___ day of ~~December 2009.~~ January 2010

_Ann Aiken_
Ann Aiken
United States District Judge

16 - OPINION AND ORDER